**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**TERRANCE WAYNE,**

       **Plaintiff,**                  **CIVIL ACTION NO. 13-CV-14495**

    **vs.**                           **DISTRICT JUDGE LINDA V. PARKER**

                                     **MAGISTRATE JUDGE MONA K. MAJZOUB**

**DANIEL HEYNS, et al.**

       **Defendants.**

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Terrance Wayne, currently a prisoner at the Marquette Branch Prison in Marquette, Michigan, has filed this action under 42 U.S.C. § 1983 against three individuals associated with the Michigan Department of Corrections (MDOC): (1) Daniel Heyns, Director of the MDOC; (2) Brad Purves, Food Service Program Manager for the MDOC; and (3) Lloyd Rapelje, Warden of the Saginaw Correctional Facility.[1] (Docket no. 1. at 6-7.) Plaintiff alleges that Defendants are denying him a "basic human need," (specifically, his right to a "healthy, safe, and adequate" diet) by providing only what Plaintiff calls "the Death Diet." (*See, e.g.*, *id.* at 13.) Plaintiff alleges that his claims arise under the Eighth Amendment, the Fourteenth Amendment, Section 504 of the Rehabilitation Act of 1973, and the Americans with Disabilities Act. (*Id.* at 16-22.) Plaintiff seeks declaratory relief on all counts, injunctive relief regarding the meal plans and nutritional needs of "aging" prisoners held by the MDOC, compensatory damages totaling $80,000.00 jointly and

---

[1]At the time he filed his Complaint, Plaintiff was housed at the Saginaw Correctional Facility.

severally from Defendants, and punitive damages in the amount of $10,000.00 from each Defendant. (*Id.* at 24-26.)

Before the Court is Defendants' Motion to Dismiss.[2] (Docket no. 14.) Plaintiff filed a Response. (Docket no. 20.) All pretrial matters have been referred to the undersigned for consideration. (Docket no. 7.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

## I.     Recommendation

For the reasons that follow, the undersigned recommends granting in part and denying in part Defendants' Motion to Dismiss (docket no. 14). Additionally, to the extent that Defendants did not address certain claims, some of Plaintiff's claims should be dismissed under 28 U.S.C. § 1915(e)(2)(B). Thus, the undersigned recommends that:

   a.  Plaintiff's claims against Defendants Heyns and Purves in their official capacities for monetary relief should be dismissed;

   b.  Plaintiff's claims against Defendant Rapelje should be dismissed as moot;

   c.  Plaintiff's Eighth Amendment claims against Defendants' Heyns and Purves in their individual capacities should survive;

   d.  Plaintiff's Eighth Amendment claims for injunctive relief against Defendants Heyns and Purves should survive; and

---

[2]Also pending before the Court are Plaintiff's Motion for Immediate Consideration for Order Against Oaks Correctional Facility Warden Curtin and Her Employees [to] Stop Retaliating Against Mentally Ill Disabled Plaintiff Wayne (docket no. 8), Plaintiff's Motion for Immediate Consideration Incorporated with Motion for Court Appointed Counsel or In the Alternative for Court Appointed Specialist-Psychiatrist (docket no. 11), and Plaintiff's Motion for Immediate Consideration to Stay Counts I and II for 180 days (docket no. 12). The Court will address these Motions in a separate Opinion and Order.

   e.  Plaintiff's remaining claims should be dismissed.

## II. Report

### A. Facts

Plaintiff alleges that he is a mentally ill,[3] fifty-year-old prisoner who has spent more than half of his life in prison. (Docket no. 1 at 8.) Plaintiff contends that "[f]or over 40 years prior to 2010 the MDOC provided all its prisoners a State Wide '4' Cycle Menu," which Plaintiff alleges was nutritionally sound. (*Id.*) Plaintiff further contends that while he was incarcerated during this time, his "over-all health was good" and that he "maintained his physical, biological and psychological health through adequate, effective and vigorous exercise routines on a daily basis . . . from the energy, stamina and nutrition provided by [these meals]." (*Id.* at 9.) Plaintiff asserts that "[g]oing into the year 2010, defendant Heyns . . . claimed a 'Budget Funding Crisis' [and] eliminated the . . . 4 Cycle Menu." (*Id.* at 10.) Thus, Plaintiff alleges, Defendants Heyns and Purves "created and enforced the new and current MDOC State Wide '2' Cycle Menu," which Plaintiff asserts contains little (if any) nutritional value and smaller portion sizes. (*Id.*) Specifically, Plaintiff asserts that the new menu consists of "unwholesome, inadequate, unnutritional, low caloric, low protein, vitamin deficient, poor quality, biologically damaging, physical sustenance deficient, unhealthy, and unsafe fare, processed and byproduct infused adolescent child size portioned foods." (*Id.* at 11.) Plaintiff notes, however, that the foods originally included in the 4 Cycle Menu are now available for purchase from an outside vendor. (*Id.* at 14.)

Plaintiff alleges that the "Death Diet" has caused (1) weight loss, (2) rectal bleeding, (3) hard

---

[3]Plaintiff describes himself as mentally ill, but he has provided no support or additional factual allegations regarding this assertion.

stool, (4) "stomach-bowel cramp pain," (5) shoulder pain, (6) "muscle loss stagnation and inability of muscle growth," (7) "hunger and growling pains one hour after 98% of all meals," (8) inability to perform any adequate, effective, and vigorous levels of daily exercise," (9) instant fatigue, nausea, and quick exertion following any physical activity, (10) high cholesterol, and (11) "psychological exacerbations of major depression, racing and common suicidal thoughts, hostile auditory hallucinations, severe mood disorder of anger and crying spells, and emotional damage." (*Id.* at 12.) Plaintiff further notes that he has a "family history of heart disease, colon cancer, diabetes, and suicide" and that he has a "very strong desire to prevent these diseases from happening and being induced by the defendants." (*Id.*) Plaintiff contends that the potatoes and bread in the "Death Diet" will increase blood-sugar levels in diabetic prisoners and interfere with insulin treatments. (*Id.*)

Plaintiff alleges that "the crux of the matter" is that he has a desire to live another 25 years and reach the age of 75–"the average life span in the U.S.A." (*Id.* at 13.) He argues that he will not be able to do so because Defendants are "denying [him] . . . his basic human needs" by "not providing the 'minimal civilized measures of lifes (sic) necessities' and by not 'evolving with the standards of decency that mark the progress of a maturing society' regarding 'proper diet, good health, exercise and longevity." (*Id*.) Plaintiff asserts that "[f]ederal laws must be amended to fit the year 2013," with specific reference to *Farmer v. Brennan*, 511 U.S. 825 (1994), and *Rhodes v. Chapman*, 451 U.S. 337 (1981). Plaintiff contends that Defendant Heyns implemented the "Death Diet" for financial gain because he is now selling the 4 Cycle Menu for the benefit of the MDOC. (*Id.* at 14.)

Plaintiff asserts that his Eighth Amendment rights were violated where the "Death Diet" is "substantially a serious and life threatening risk of harm now and . . . in the near future." (*Id.* at 16.)

Plaintiff alleges that Defendants are aware of this risk because of "national public information" and "through prisoner grievances regarding proper diet, good health, exercise and longevity of life," but they have "failed to take any corrective action." (*Id.* at 17.) He asserts that his Fourteenth Amendment due-process rights were violated because Defendants have deprived him of his life, "soon or in the near future," by providing only the "Death Diet." (*Id.* at 18.) And he asserts that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by forcing indigent prisoners to serve "cruel time" while other prisoners are allowed to serve "kind time." (*Id.* at 19.) Plaintiff describes this "cruel time" as "Denying him access to five 'reasonable necessary humane privileges,' to wit: (1) foods, snacks and beverages to supplement the 'Death Diet;' (2) gym shoes; (3) in-cell televisions and radios for in-cell entertainment during lengthy periods of isolation; (4) telephone calls to loved ones and family; and (5) picture-photograph taking to send out to family and loved ones." (*Id.*)

Plaintiff then alleges that he "has mental impairments that substantially limit one or more major life activity, (sic) including but not limited to thinking, concentrating, and interacting with others, including his ability to control his behavior; he has records of having such an impairment; or he is regarding as having an impairment." (*Id.* at 19-20.) And he alleges that Defendants violated the Rehabilitation Act of 1973 and the Americans with Disabilities Act when they "fail[ed] to provide Plaintiff with mental illness his basic human needs, a reasonable life span, and the alleged 'reasonable necessary humane privileges.'" (*Id* at 20, 21.)

### B. Motion to dismiss standard

28 U.S.C. § 1915(e)(2)(B) requires the court to review all complaints where the plaintiff is proceeding In Forma Pauperis and sua sponte dismiss a case if it determines that the action is

frivolous or malicious, fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), or seeks monetary relief against a defendant who is immune from such relief.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

This acceptance of factual allegations as true, however, is inapplicable to legal conclusions: "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations and citations omitted). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* To make this determination, a court may apply the following two-part test: (1) "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth; and (2) "assume the veracity [of the remaining allegations] and determine whether they plausibly give rise

to an entitlement to relief." *Id.* at 679.

  **C.**  **Analysis**

    **1.**  **Plaintiff's Claims Against Defendants in Their Official Capacities**

Plaintiff has sued each of the Defendants in their official and individual capacities. The Eleventh Amendment bars suits for money damages against state employees sued in their official capacity. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004). Therefore, Plaintiff cannot prevail on his claims for monetary damages against any of the Defendants in their official capacities. These claims should be dismissed. In addition, claims for declaratory or prospective injunctive relief become moot once a prisoner is transferred to a different prison facility. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 510 n.1 (6th Cir. 2001) (citation omitted). Thus, Plaintiff's claims against Defendant Rapelje should be dismissed in their entirety.

    **2.**  **Plaintiff's Eighth Amendment Claim**

The Eighth Amendment bars states from imposing punishments that are cruel and unusual, including those that involve the unnecessary and wanton infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Id.* (citing *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

The Sixth Circuit has held that with regard to food, it need not be tasty or aesthetically pleasing, but prisoners must receive adequate nutrition to maintain normal health. *See Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir.1977). For example, in *Paige v. Harris,* the U.S. District

7

Court for the Western District of Michigan noted, "The Sixth Circuit repeatedly has held that a diet of food loaf does not violate the Eighth Amendment because nutritional and caloric requirements are met." No. 06-12, 2006 WL 416242, *1 (W.D. Mich. Feb. 17, 2006) (citing *Ostrander v. Trippett*, 71 F.App'x 565, 566 (6th Cir.2003); *Payton–Bey v. Vidor*, No. 94–2472, 1995 WL 603241, at *1 (6th Cir. Oct.12, 1995); *Hinton v. Doney*, No. 93–2050, 1994 WL 20225, at *2 (6th Cir. Jan.26, 1994); *Boswell v. Meyers*, No. 89–2144, 1990 WL 109230, at *1 (6th Cir. Aug.2, 1990)). Thus, in dismissing the plaintiff's claims, the *Paige* court noted that the plaintiff "[did] *not* allege that he was deprived of adequate nutrition during the brief four-day period that he was on food loaf restriction." (*Id.* (emphasis added).)

Here, however, Plaintiff *does* allege that he is being deprived of adequate nutrition and that the "Death Diet" does not meet minimum caloric requirements. (*See* docket no. 1.) As set forth above, Plaintiff claims, in part, that the food currently provided by the MDOC is unnutritional, low caloric, low protein, and vitamin deficient. (*Id.* at 11.) Defendants argue that Plaintiff's Eighth Amendment claims should fail because the MDOC, by policy, "serves meals which 'satisfy the nutritional and caloric recommendations set forth in the dietary reference intakes approved by the National Research Council'" and that certain dietary guidelines "'shall be followed for menu planning.'" (Docket no. 14 at 14 (quoting P.D. 04.07.100).) Defendants further argue that MDOC policy allows for prisoners with special dietary needs to request a Therapeutic Diet and that Plaintiff has not requested such a diet. (*Id.* at 14-15 (citing P.D. 04.07.101.) Defendants contend that Plaintiff "can provide nothing, other than his unsupported allegations, that the meals he is served do not provide him the optimal nutrition he seeks or are in some way physically harmful to his health." (*Id.* at 15.)

Defendants' assertions are nothing more than a denial of Plaintiff's allegations. While Defendant is correct that the Court "may consider matters of public record, such as MDOC's policy directives, without converting Defendants' Motion to Dismiss into one for summary judgment," (*id.* at 14 n.1), the mere existence of a policy directive does not defeat Plaintiff's claims that Defendants have failed to follow that policy directive. Plaintiff claims that Defendants are serving prisoners throughout the MDOC nutritionally deficient food. Whether Plaintiff's claims are true is a question of fact that is not properly determined on Defendants' Motion to Dismiss. At this time, the Court must assume that Plaintiff's factual allegations are true and need only consider whether such allegations are more than mere speculation. Specifically, in the context of the Eighth Amendment, to survive a Motion to dismiss, a plaintiff must allege facts that satisfy an objective and subjective component: (1) a sufficiently grave deprivation and (2) that the defendant acted with a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir.1995).

As Defendants state, "[t]o meet the objective component, a prisoner must demonstrate that he has been incarcerated under conditions posing a substantial risk of serious harm, which is also described as the denial of 'the minimal civilized measure of life's necessities.'" (Docket no. 14 at 13 (quoting *Farmer*, 511 U.S. at 834). Plaintiff alleges that the "Death Diet" poses a substantial risk of serious harm by causing (1) weight loss, (2) rectal bleeding, (3) hard stool, (4) "stomach-bowel cramp pain," (5) shoulder pain, (6) "muscle loss stagnation and inability of muscle growth," (7) "hunger and growling pains one hour after 98% of all meals," (8) inability to perform any adequate, effective, and vigorous levels of daily exercise," (9) instant fatigue, nausea, and quick exertion following any physical activity, (10) high cholesterol, and (11) "psychological exacerbations of

major depression, racing and common suicidal thoughts, hostile auditory hallucinations, severe mood disorder of anger and crying spells, and emotional damage." (Docket no. 1 at 12.)

To meet the subjective standard, "a prisoner must demonstrate that the prison officials acted with deliberate indifference towards prisoner safety or health." (Docket no. 14 at 13 (citing *Farmer*, 511 U.S. at 834).) That is, a plaintiff must show that (1) "the official being sued subjectively perceived facts from which to infer substantial risk to the [plaintiff]," (2) the official "did in fact draw that inference," and (3) the official "then disregarded that risk." *Quigley v. Toung Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (internal quotations omitted). "Direct evidence about a defendant's knowledge is not necessary, but rather, the knowledge aspect of the subjective component can be determined ["in the usual ways, including inference from circumstantial evidence" *Quigley*, 707 F.3d at 682]." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 564, 569 (6th Cir. 2013). For example, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Quigley*, 707 F.3d at 682; *see also Villegas*, 709 F.3d at 569. Plaintiff asserts that Defendants were aware of the risks associated with a nutritionally deficient diet because of various national standards and, moreover, Defendants chose to disregard this risk due to an "alleged 'Budget Crisis' or . . . [a] profiting scam." (Docket no. 1 at 14, 17.)

Defendants respond to Plaintiff's Complaint by asserting that "'the Eighth Amendment is not violated so long as the food is prepared and served under conditions which do not present an immediate danger to the health or well-being of the inmates who consume it.'" (Docket no. 14 at 14 (quoting *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. Denied*, 479 U.S. 817 (1986)).) But Plaintiff does not claim that Defendants failed to prepare food properly. Moreover, as discussed, Plaintiff *does* allege that the food poses an immediate danger to his health and well-

being.

The undersigned acknowledges that, as Defendants contend, Plaintiff has not provided any evidentiary support for his claims that the current MDOC menu is nutritionally deficient. Nevertheless, such evidence is unnecessary to survive a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). Thus, construing the Complaint liberally and in the light most favorable to the plaintiff, and accepting Plaintiff's allegations as true, the Court should deny Defendants' Motion with regard to Plaintiff's Eighth Amendment claims.

### 3. Plaintiff's Deprivation of Life Claim

The Fourteenth Amendment protects against deprivations of life, liberty, or property. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981). Procedural due process claims apply to such deprivations that are "without due process of law." *Id.* Additionally, two types of substantive due process violations are recognized by the Sixth Circuit: "(1) official acts that are unreasonable and arbitrary and may not take place no matter what procedural protections accompany them, and (2) official conduct that shocks the conscience." *Harris v. City of Akron*, 20 F.3d 1396, 1405 (6th Cir. 1994) (citations and internal quotations omitted). "Actions meet this high standard if they are an 'egregious abuse of governmental power.'" *Kinross Charter Twp. v. Osborn*, No. 06–CV–245, 2007 WL 4284861, at *16 (W.D. Mich. Dec. 3, 2007) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir.1999)).

Plaintiff's Complaint makes the general assertion that the "Death Diet" "significantly decreases Plaintiff's life span expectancy [and increases] risk of sudden death." (Docket no. 1 at 14.) He alleges that Defendants are violating his Fourteenth Amendment rights by "denying him a full reasonable life opportunity and span, executing him slowly." (*Id.*) Thus, Plaintiff claims, Defendants have deprived him of his "life interest." (*Id.* at 14, 17-18.)

"[A] 'life interest' is the legal entitlement not to be killed under certain conditions." *McKithen v. Brown*, 565 F.Supp.2d 440, 451 (E.D.N.Y. 2008) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)). While Plaintiff's Complaint is sufficient to support a claim under the Eighth Amendment for a potential failure to provide nutritionally adequate meals, his allegations do not contain factual assertions sufficient to show that Defendants' implementation of the new meal plan will shorten his life span so as to implicate his "life interest." Plaintiff's allegation that Defendants are "executing him slowly" is, at best, speculative. And he has not alleged conduct that "shocks the conscience" or was an "egregious abuse of governmental power." Therefore, the Court should dismiss Plaintiff's deprivation of life claim.

### 4. Plaintiff's Equal Protection Claim

Plaintiff claims that Defendants violated the equal-protection clause of the Fourteenth Amendment by "denying him access to five reasonably necessary human privileges," including (1) foods supplementing the "Death Diet," (2) gym shoes, (3) in-cell television and radio, (4) telephone calls to loved ones, and (5) picture taking. (Docket no. 1 at 19.) Plaintiff alleges that Defendants' denial of these privileges violates the Fourteenth Amendment because these privileges are available to prisoners with the financial ability to pay for them.

The Fourteenth Amendment "protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). To prevail on such a claim, a plaintiff must show (1) that he has been treated differently from persons similarly situated to him "in all material respects," and (2) that the defendants "intentionally discriminated against him and that their behavior was motivated by purposeful discrimination." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed.

Appx. 826, 836 (6th Cir.2009); *Abdullah v. Fard*, 173 F.3d 854 (6th Cir. 1999) (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977)). Regardless of whether Plaintiff can show that other prisoners are similarly situated in all material respects, Plaintiff does not allege that Defendants' refusal to provide these privileges to prisoners free of charge is "motivated by purposeful discrimination." Moreover, to the extent that Plaintiff's Complaint contains claims regarding gym shoes, in-cell entertainment, telephone calls, or picture taking, his Complaint is entirely devoid of any factual allegations related to these matters. Therefore, the undersigned recommends dismissing Plaintiff's equal-protection claims.

### 5. Plaintiff's ADA and Rehabilitation Act Claims

Plaintiff has alleged that Defendants discriminated against him on the basis of his disability in violation of the ADA and Section 504 of the Rehabilitation Act of 1973. (Docket no. 1 at 19-21.) Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Rehabilitation Act of 1973 states that

> [n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794.

The ADA applies to state prisons and, as such, may be asserted against the prison or against a prison employee in his or her official capacity. *Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010) (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998)). *See also Everson v. Leis*,

556 F.3d 484, 501 n.7 (6th Cir. 2009). But Title II of the ADA does not provide a private right of action against a public employee acting in his or her individual capacity. *Everson v. Leis*, 556 F.3d at 501 n.7 (citations omitted). Likewise, the Rehabilitation Act does not permit suits against government officials in their individual capacity. *Tanney v. Boles*, 400 F.Supp.2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). Consequently, Plaintiff cannot succeed on his claims against Defendants in their individual capacities for violation of the ADA or the Rehabilitation Act.

To prevail on a claim under the ADA, a plaintiff must show that: (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under a program solely because of his disability. *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). Similarly, to establish a claim under the Rehabilitation Act, a plaintiff must show that (1) he is a "handicapped person" under the Act; (2) he is "otherwise qualified" for participation in the program; (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) the relevant program or activity is receiving Federal financial assistance. *Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 573 (6th Cir. 1988).

Plaintiff alleges that he is mentally disabled and states that Defendants discriminated against him by refusing to provide him with a nutritionally sound diet and other "humane privileges." (*See* docket no. 1 at 19-21.) Even assuming, *arguendo*, that Plaintiff is disabled under the ADA and handicapped under the Rehabilitation Act, Plaintiff has failed to allege any facts to suggest that Defendants discriminated against him solely because of his disability. Plaintiff's Complaint contains nothing more than threadbare recitals and legal conclusions couched as factual allegations. Thus, Plaintiff's ADA and Rehabilitation Act claims fail and should be dismissed.

14

### 6. Qualified Immunity

Defendants allege that they are entitled to qualified immunity for Plaintiffs' claims. (Docket no. 14 at 17-18.) Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). That is, "'[t]he defense of qualified immunity protects officials from individual liability for monetary damages but not from declaratory or injunctive relief.'" *Top Flight Entertainment, Ltd. V. Schuette*, 729 F.3d 623, 635 n.2 (6th Cir. 2013) (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001)).

The Sixth Circuit has set forth a tri-part test to determine whether a defendant is entitled to qualified immunity: whether (1) "the facts viewed in the light most favorable to the plaintiff[] show that a constitutional violation has occurred;" (2) "the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (3) "the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir.2003)); *see also Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir.1999) (en banc) (noting that "objective legal reasonableness" is a distinct, third prong of the qualified immunity analysis). The court may, however, take up these considerations in any order. *See Pearson v. Callahan*, 555 U.S. 223 (2009).

"A defendant who invokes the qualified immunity defense must present facts which, if true, would entitle him to immunity." *Noble v. Schmitt*, 87 F.3d 157, 161 (citing *Poe v. Haydon*, 853 F.2d

15

418, 425 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989)). If the defendant does so, "the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *See id.*; *see also*, *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006) (citing *Barrett v. Steubenville City Schools*, 388 F.3d 967, 970 (6th Cir.2004)). "The [plaintiff] will defeat a qualified immunity defense if he can produce sufficient evidence after discovery to prove the existence of genuine issues of material fact regarding the issue of immunity." *Noble*, 87 F.3d at 161 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Defendants' Motion for qualified immunity rests solely on their assertion that Plaintiff "has failed to establish that his rights under the Eighth Amendment were violated." (Docket no. 14 at 18-19.) As discussed *supra*, viewing the allegations in the Complaint in a light most favorable to Plaintiff, the undersigned disagrees. Defendants do not assert, and indeed could not support an argument, that Plaintiff's Eighth Amendment right to be provided with nutritionally adequate food was not clearly established or that a reasonable person would not have known about his right; the MDOC policy to provide nutritionally adequate food would contradict any such assertion. Defendants also fail to claim that their actions were not objectively unreasonable. Thus, Defendants have not presented sufficient facts to suggest that they are entitled to a qualified-immunity defense. Moreover, because Plaintiff's allegations support his claims that a constitutional violation may have occurred, any determination of qualified immunity is premature as Plaintiff need not produce any evidence to defeat such a defense until after discovery has concluded. Therefore, Defendants' Motion should be denied without prejudice.

### D. Conclusion

For the above-stated reasons, the undersigned recommends granting in part and denying in

part Defendants' Motion to Dismiss (docket no. 14). Additionally, to the extent that Defendants did not address certain claims, some of Plaintiff's claims should be dismissed under 28 U.S.C. § 1915(e)(2)(B). Thus, the undersigned recommends that:

  a. Plaintiff's claims against Defendants Heyns and Purves in their official capacities for monetary relief should be dismissed;

  b. Plaintiff's claims against Defendant Rapelje should be dismissed as moot;

  c. Plaintiff's Eighth Amendment claims against Defendants' Heyns and Purves in their individual capacities should survive;

  d. Plaintiff's Eighth Amendment claims for injunctive relief against Defendants Heyns and Purves should survive; and

  e. Plaintiff's remaining claims should be dismissed.

### III. Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: June 6, 2014  s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served up counsel of record and on Plaintiff Terrance Wayne on this date.

Dated: June 6, 2014  s/ Lisa C. Bartlett
Case Manager

18