**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**TERRANCE WAYNE,**

       **Plaintiff,**          **CIVIL ACTION NO. 13-CV-14495**

  **vs.**          **DISTRICT JUDGE LINDA V. PARKER**

       **MAGISTRATE JUDGE MONA K. MAJZOUB**

**DANIEL HEYNS, et al.**

       **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Terrance Wayne, currently a prisoner at the Marquette Branch Prison in Marquette, Michigan, has filed this action under 42 U.S.C. § 1983 against three individuals associated with the Michigan Department of Corrections (MDOC): (1) Daniel Heyns, Director of the MDOC; (2) Brad Purves, Food Service Program Manager for the MDOC; and (3) Lloyd Rapelje, Warden of the Saginaw Correctional Facility.[1] (Docket no. 1. at 6-7.) Plaintiff alleges that Defendants are denying him a "basic human need," (specifically, his right to a "healthy, safe, and adequate" diet) by providing only what Plaintiff calls "the Death Diet." (*See, e.g.*, *id.* at 13.) Plaintiff alleges that his claims arise under the Eighth Amendment, the Fourteenth Amendment, Section 504 of the Rehabilitation Act of 1973, and the Americans with Disabilities Act. (*Id.* at 16-22.) Plaintiff seeks declaratory relief on all counts, injunctive relief regarding the meal plans and nutritional needs of "aging" prisoners held by the MDOC, compensatory damages totaling $80,000.00 jointly and

---

[1] At the time he filed his Complaint, Plaintiff was housed at the Saginaw Correctional Facility.

severally from Defendants, and punitive damages in the amount of $10,000.00 from each Defendant. (*Id.* at 24-26.) The Court has previously dismissed all of Plaintiff's claims except his Eighth Amendment claims against Defendants Heyns and Purves. (Docket no. 26.)

Before the Court is Defendants' Motion to for Summary Judgment.[2] (Docket no. 23.) Plaintiff filed a Response. (Docket no. 28.) Defendant filed a Reply. (Docket no. 29.) And Plaintiff then filed a Surreply and a Second Response (docket nos. 31 and 33) along with several affidavits and letters (docket nos. 32, 36, 37, and 39). All pretrial matters have been referred to the undersigned for consideration. (Docket nos. 7 and 27.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

**I.      Recommendation**

For the reasons that follow, the undersigned recommends granting Defendants' Motion to for Summary Judgment (docket no. 23). Additionally, Defendants' outstanding Motion (docket no. 30), and Plaintiff's outstanding Motions (docket nos. 28, 34, 35, and 38) should be denied as moot. The Court should, therefore, dismiss this matter in its entirety.

**II.     Report**

    **A.     Facts**

---

[2]Also pending before the Court are Plaintiff's Motion to Appoint Counsel (docket no. 28), Defendants' Motion to Stay Discovery (docket no. 30), Plaintiff's Motion for Complaint to Become a Class Action (docket no. 34), Plaintiff's Motion to Compel Discovery (docket no. 35), and Plaintiff's Motion for Order for Defendant to Provide a 3000 Calorie Diet (docket no. 38). Because the undersigned recommends granting Defendants' Motion for Summary Judgment, the Court should also deny these Motions as moot.

Plaintiff alleges that he is a mentally ill,[3] fifty-year-old prisoner who has spent more than half of his life in prison. (Docket no. 1 at 8.) Plaintiff contends that "[f]or over 40 years prior to 2010 the MDOC provided all its prisoners a State Wide '4' Cycle Menu," which Plaintiff alleges was nutritionally sound. (*Id.*) Plaintiff further contends that while he was incarcerated during this time, his "over-all health was good" and that he "maintained his physical, biological and psychological health through adequate, effective and vigorous exercise routines on a daily basis . . . from the energy, stamina and nutrition provided by [these meals]." (*Id.* at 9.) Plaintiff asserts that "[g]oing into the year 2010, defendant Heyns . . . claimed a 'Budget Funding Crisis' [and] eliminated the . . . 4 Cycle Menu." (*Id.* at 10.) Thus, Plaintiff alleges, Defendants Heyns and Purves "created and enforced the new and current MDOC State Wide '2' Cycle Menu," which Plaintiff asserts contains little (if any) nutritional value and smaller portion sizes. (*Id.*) Specifically, Plaintiff asserts that the new menu consists of "unwholesome, inadequate, unnutritional, low caloric, low protein, vitamin deficient, poor quality, biologically damaging, physical sustenance deficient, unhealthy, and unsafe fare, processed and byproduct infused adolescent child size portioned foods." (*Id.* at 11.) Plaintiff notes, however, that the foods originally included in the 4 Cycle Menu are now available for purchase from an outside vendor. (*Id.* at 14.)

Plaintiff alleges that the "Death Diet" has caused (1) weight loss, (2) rectal bleeding, (3) hard stool, (4) "stomach-bowel cramp pain," (5) shoulder pain, (6) "muscle loss stagnation and inability of muscle growth," (7) "hunger and growling pains one hour after 98% of all meals," (8) inability to perform any adequate, effective, and vigorous levels of daily exercise," (9) instant fatigue, nausea,

---

[3]Plaintiff describes himself as mentally ill, but he has provided no support or additional factual allegations regarding this assertion.

and quick exertion following any physical activity, (10) high cholesterol, and (11) "psychological exacerbations of major depression, racing and common suicidal thoughts, hostile auditory hallucinations, severe mood disorder of anger and crying spells, and emotional damage." (*Id.* at 12.) Plaintiff further notes that he has a "family history of heart disease, colon cancer, diabetes, and suicide" and that he has a "very strong desire to prevent these diseases from happening and being induced by the defendants." (*Id.*) Plaintiff contends that the potatoes and bread in the "Death Diet" will increase blood-sugar levels in diabetic prisoners and interfere with insulin treatments. (*Id.*)

Plaintiff alleges that "the crux of the matter" is that he has a desire to live another 25 years and reach the age of 75–"the average life span in the U.S.A." (*Id.* at 13.) He argues that he will not be able to do so because Defendants are "denying [him] . . . his basic human needs" by "not providing the 'minimal civilized measures of lifes (sic) necessities' and by not 'evolving with the standards of decency that mark the progress of a maturing society' regarding 'proper diet, good health, exercise and longevity." (*Id.*) Plaintiff asserts that "[f]ederal laws must be amended to fit the year 2013," with specific reference to *Farmer v. Brennan*, 511 U.S. 825 (1994), and *Rhodes v. Chapman*, 451 U.S. 337 (1981). Plaintiff contends that Defendant Heyns implemented the "Death Diet" for financial gain because he is now selling the 4 Cycle Menu for the benefit of the MDOC. (*Id.* at 14.)

Plaintiff asserts that his Eighth Amendment rights were violated where the "Death Diet" is "substantially a serious and life threatening risk of harm now and . . . in the near future." (*Id.* at 16.) Plaintiff alleges that Defendants are aware of this risk because of "national public information" and "through prisoner grievances regarding proper diet, good health, exercise and longevity of life," but they have "failed to take any corrective action." (*Id.* at 17.)

### B. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

**C.  Analysis**

    **1.  Administrative Remedies**

As a threshold matter, the Court must determine whether Plaintiff properly exhausted his administrative remedies. The Prison Litigation Reform Act (PLRA) of 1995 requires that a prisoner exhaust all administrative remedies before filing a Section 1983 action. Specifically, the statute provides, "no action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). But "while the preferred practice is for inmates to complete the grievance process prior to the filing of an action and to attach to their complaint documentation of that fact, 'because the exhaustion requirement is not jurisdictional, district courts have some discretion in determining compliance with the statute.'" *Curry v. Scott*, 249 F.3d 493, 502 (6th Cir. 2001)(citations omitted). Notably, the Sixth Circuit "requires an inmate to make 'affirmative efforts to comply with the administrative procedures,' and analyzes whether those 'efforts to exhaust were sufficient under the circumstances.'" *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (citing *Napier v. Laurel Cnty., Ky.,* 636 F.3d 218, 224 (6th Cir. 2011)(internal quotation marks and citation omitted)).

The MDOC Policy Directive regarding prisoner grievances requires a prisoner to file a Step I grievance within five days of attempting to resolve the grievable issue with prison staff. MDOC Policy Directive 03.02.130(V). The prisoner must then proceed through Steps II and III of the grievance process and receive a Step III response to complete the process. *See Muttscheler v. Martin*, No. 12-1221, 2013 WL 3730095, at *3-5 (W.D. Mich. July 15, 2013).

Specifically at issue in this matter is Plaintiff's grievance # SRF-13-02-0411. On February 27, 2013, Plaintiff filed his initial grievance, which set forth the facts as follows:

> I am claiming "Unsatisfactory Conditions of Confinement," pursuant to PD 03.02.130.E, against MDOC Director, Heyns, MDOC Food Service Program Manager, Purves, SRF Warden and SRF Food Service Director for purchasing and providing to me, a 49 year old, "on a daily basis," unwholesome, unnutritional (sic), low calorie, extremely low protein, extremely small portions, poor quality and non-physical sustenance of "meats, poultry, fish and foods," in violation of PD 03.03.130.E that subjects me to a serious risk of future harm (heart and colon cancer disease, bone and muscle deterioration) in violation of Halling v. McKinny, 113 S.ct. 2475, and, that "prevents me from "exercising adequately, effectively, and vigorously on a daily basis in violation of Halling v. McKinny, 113 S.ct. 2475, BASED upon the MDOC position of "Budget Problems" and "Supplemental Dietary Foods Are available For Purchase From The Prison Store Chains" even though im indigent, violating Pugh v. Locke, 406 F.S. 318, amounting to cruel and deliberate indifference to my medical, physical and biological health in violation of Wilson v. Seitov, 111 S. Ct. 2321. Also concerning my "health, diet, and exercise, for a man of 49, the MDOC and SRF are NOT "evolving with the standards of decency that mark the PROGRESS of a MATURING society," in violation of Rhodes v. Chapman, 101 S. Ct. 2392. I request 3000 calories, 100 grams of protein, and larger portions of pasta noodles, rice, and potatoes to be provided daily and better good quality meats, poultry, and fish be provided replacing the poor quality to curb the violations for a man of 49.

(Docket no. 28 at 25.) The prison responded on February 27, 2013, by claiming that Plaintiff made "numerous general allegations about the state-wide dietician approved menu, . . . numerous general allegations about the quality of meat served and request larger portions of specific foods to be served." (*Id.*) The response concludes that Plaintiff did "not actually state[] a violation of policy

7

corroborated by specific information as required by the grievance policy," so his grievance was "deemed vague and rejected at step I." (*Id.*)

Plaintiff filed his Step II appeal on March 20, 2013, reasserting his allegations from his initial grievance in greater detail. (*Id.* at 26-28.) Warden Rapelje found that the grievance was properly rejected because Plaintiff "provide[d] nothing to substantiate the allegations which therefore make them his opinion." (*Id.* at 29.) On March 31, 2013, Plaintiff filed his Step III appeal, which set forth his complaints in detail over seven pages. (*Id.* at 30-36.) On June 26, 2013, Plaintiff's appeal was denied because his "issues were in fact considered and appropriately responded to at the facility level." (*Id.* at 37.) Plaintiff filed his Complaint on October 25, 2013. (Docket no. 1.)

Defendants assert that because Plaintiff's grievance was rejected for procedural reasons (that is, because his grievance was vague) instead of being rejected on the merits, the proper procedure was for Plaintiff to file a new Step I grievance instead of appealing to Step II. Therefore, Defendants contend, Plaintiff's appeals were inappropriate, and he failed to exhaust his administrative remedies. (Docket no. 23 at 23 (citing *Burnett v. Howard*, No. 09-37, 2010 U.S. Dist. LEXIS 304099, at *3 (W.D. Mich. Mar. 30, 2010) ("As long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." (quotations omitted))).)

Defendants are correct that Plaintiff's Step I Grievance was rejected for being vague under PD 03.02.130(G)(1), which allows a grievance to be rejected if "[i]t is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance

8

filed by the grievant." MDOC PD 03.02.130; (*see* docket no. 28). But nothing in PD 03.02.130 requires Plaintiff to file another Step I grievance for such a rejection. To the contrary, PD 03.02.130(X) only states that "[a]fter receipt of the grievance, the Grievance Coordinator shall determine if the grievance should be rejected pursuant to this policy and, if so, sign and return the grievance to the grievant with an explanation as to why it was rejected. In CFA, if the grievance is being rejected, the Grievance Coordinator's supervisor shall review the reason for the rejection to ensure it is in accordance with policy; both the Grievance Coordinator and the supervisor shall sign the grievance before returning the grievance to the grievant."  And PD 03.02.130(BB) allows for "[a] grievant [to] file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response."

Notably, PD 03.02.130(R) sets forth the requirements for a grievance: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." Plaintiff stated that he was claiming a violation of PD 03.03.130.E, which requires that "[a]ll prisoners shall be provided wholesome and nutritionally adequate meals." He alleged that the violation was ongoing and that it was caused by Heyns, Purves, and Rapelje. He further alleged that the policy was being violated by the service of unnutritional, low-calorie food in small portions. Moreover, Plaintiff included his principal legal theories and his desired resolution, neither of which is required or prohibited under PD 03.02.130. Plaintiff appealed the Step I determination that his grievance was vague, asserting that he provided all of the necessary information under the applicable policy directive and further detailing his complaint.

9

Plaintiff's grievance was rejected at Step II because his grievance was nothing more than his own opinion where he "provide[d] nothing to substantial the allegations." (*See* docket no. 28 at 29.) But rejecting Plaintiff's grievance for a failure to support his claim is entirely different than rejecting his grievance for a lack of specificity. Indeed, Warden Rapelje even noted in his Step II response that "Grievant appeals to Step II stating PD-03.03.130 requires prisoners be provided with wholesome and nutritional meals. Grievant claims he is not receiving this type of meal." *Id.* Moreover, Plaintiff was warned in his Step I response that he would be punished if he "continue[d] to abuse the grievance procedure." (*Id.* at 25.) The Court cannot discern what more Plaintiff could have done to comply with PD 03.02.130; it appears that Plaintiff followed the applicable grievance procedures. Therefore, even though the MDOC rejected Plaintiff's Step I grievance as vague, the undersigned finds that Plaintiff's efforts to exhaust his administrative remedies were sufficient under the circumstances.

### 2. Plaintiff's Substantive Claims[4]

The Eighth Amendment bars states from imposing punishments that are cruel and unusual, including those that involve the unnecessary and wanton infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Id.* (citing *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). But "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

---

[4]To the extent that Plaintiff's Responses to Defendants' Motion address any of his claims that were previously dismissed, the undersigned will not analyze these claims.

The Sixth Circuit has held that with regard to food, it need not be tasty or aesthetically pleasing, but prisoners must receive adequate nutrition to maintain normal health. *See Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir.1977). For example, in *Paige v. Harris,* the U.S. District Court for the Western District of Michigan noted, "The Sixth Circuit repeatedly has held that a diet of food loaf does not violate the Eighth Amendment because nutritional and caloric requirements are met." No. 06-12, 2006 WL 416242, *1 (W.D. Mich. Feb. 17, 2006) (citing *Ostrander v. Trippett*, 71 F.App'x 565, 566 (6th Cir.2003); *Payton–Bey v. Vidor*, No. 94–2472, 1995 WL 603241, at *1 (6th Cir. Oct.12, 1995); *Hinton v. Doney*, No. 93–2050, 1994 WL 20225, at *2 (6th Cir. Jan.26, 1994); *Boswell v. Meyers*, No. 89–2144, 1990 WL 109230, at *1 (6th Cir. Aug.2, 1990)). Thus, in dismissing the plaintiff's claims, the *Paige* court noted that the plaintiff "[did] *not* allege that he was deprived of adequate nutrition during the brief four-day period that he was on food loaf restriction." (*Id.* (emphasis added).)

In the context of the Eighth Amendment, to survive a Motion to dismiss, a plaintiff must allege facts that satisfy an objective and subjective component: (1) a sufficiently grave deprivation and (2) that the defendant acted with a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir.1995). To satisfy the objective component, the plaintiff must show that he "faced a substantial risk of serious harm." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 564, 568 (6th Cir. 2013). But "[t]he objective component further 'requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency'–that is, it 'is not one that today's society chooses to tolerate.'" *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). Therefore, the plaintiff must show that (1) he "faced a substantial risk of

11

serious harm," and (2) the "risk is one that society chooses not to tolerate."[5] *Id.*

Despite Plaintiff's arguments with regard to the "4-cycle menu" versus the new "2-cycle menu," the alleged conflict related to ownership of the food vendors, the availability of "4-cycle menu" items for purchase, and any discussion of the State of Michigan's budget, the threshold inquiry before the Court is whether the MDOC's current menu provides adequate nutrition for prisoners to maintain normal health. Specifically, Plaintiff's claims require the Court to determine whether the current menu comports with current Sixth Circuit interpretation of nutritional requirements under the Eighth Amendment. Whether the food is appetizing and the MDOC's motivation for changing menus is immaterial.

When addressing Defendants' prior Motion to Dismiss, the undersigned noted that Defendants relied primarily on their assertion that the MDOC, by policy, "serves meals which 'satisfy the nutritional and caloric recommendations set forth in the dietary reference intakes approved by the National Research Council'" and that certain dietary guidelines "'shall be followed for menu planning.'" (Docket no. 14 at 14 (quoting P.D. 04.07.100).) The Court found that "the mere existence of a policy directive does not defeat Plaintiff's claims that Defendants have failed to follow that policy directive." And because the Court was required to assume that Plaintiff's factual allegations were true, Defendants' Motion was denied. (Docket nos. 22 and 26.)

Here, however, in support of their Motion for Summary Judgment, Defendants attach the affidavit of Barbara Anderson, a Registered Dietitian/Nutritionist with the MDOC. (Docket no. 23-2.) Anderson states that the Dietary Reference Intake values approved by the National Research

---

[5]Because Plaintiff has not satisfied the objective requirements of his deliberate-indifference claim, the Court need not address the subjective component.

Counsel suggest that moderately active men over 50 years of age should intake 2,200 to 2,400 calories per day. (*Id.* at 3.) She asserts that based on his age, height, weight, and activity level, Plaintiff should intake approximately 2,161 calories per day to maintain his weight of 170 pounds. (*Id.* at 4.) Moreover, she states that the current MDOC menu allows for an average daily caloric intake value of 2600 calories. (*Id.* at 3.) To further support Defendants' position, Anderson notes that the food recipes were rewritten in 2010 "to decrease sodium, fat, saturated fat, and cholesterol," and that although Plaintiff has lost approximately ten pounds in the last four years, he is now at a "healthier weight for his height." (*Id.* at 4.)

As discussed in his Response, Plaintiff's primary argument is that his weight loss is due to lost muscle mass. (Docket no. 28 at 4.) He asserts that he could "survive" on 2,160 calories per day, but that he "CANNOT exercise vigorously off 2160 calories." (*Id.*) Moreover, he contends, all of the new menu items are high in sodium and sugar, which causes high cholesterol and which he describes as "[a] diebetics (sic) worst nightmare." (*Id.* at 5-7.) But Plaintiff is not diabetic, and despite his passing assertion that "Anderson forgot to mention my high cholesterol," he has provided no evidence to suggest that he has high cholesterol or that the foods available through the MDOC menu are high in cholesterol. At most, Plaintiff's claims rest on the presumption that he has a right to vigorous exercise and that he needs to intake 3,000 calories per day to maintain his muscle mass. But the Eighth Amendment affords no such right. To the contrary, the Sixth Circuit has only found that "'a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees. Inmates require regular exercise to maintain reasonably good physical and psychological health.'" *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995) (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)). Plaintiff has provided no

13

evidence to suggest, and indeed, he has not alleged, that he has been deprived of exercise or recreational opportunity; he has only alleged that he cannot engage in the "vigorous exercise" to which he is accustomed. Moreover, to the extent that Plaintiff has a medical condition, such as high cholesterol or diabetes, that requires a special diet, MDOC policy provides for an alternative menu that meets these requirements. Any alleged denial of such a request by Defendants for medical reasons is not at issue in the current matter.

The Court is cognizant of Plaintiff's desire to eat more appetizing food and to have access to fresh fruits and vegetables on a regular basis. But even making all justifiable inferences in a light most favorable to Plaintiff, there is a clear absence of any evidence to support his claims. At most, Plaintiff's claims are based on his own speculation and his desire to maintain optimal fitness through vigorous exercise and higher caloric intake. But his Eight Amendment rights do not extend that far. Defendants' motion should be granted.

### 3. Qualified Immunity

Defendants allege that they are entitled to qualified immunity for Plaintiff's claims. (Docket no. 14 at 17-18.) Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). That is, "'[t]he defense of qualified immunity protects officials from individual liability for monetary damages but not from declaratory or injunctive relief.'" *Top Flight Entertainment, Ltd. V. Schuette*, 729 F.3d 623, 635 n.2 (6th Cir. 2013) (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001)).

The Sixth Circuit has set forth a tri-part test to determine whether a defendant is entitled to qualified immunity: whether (1) "the facts viewed in the light most favorable to the plaintiff[] show that a constitutional violation has occurred;" (2) "the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (3) "the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir.2003)); *see also Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir.1999) (en banc) (noting that "objective legal reasonableness" is a distinct, third prong of the qualified immunity analysis). The court may, however, take up these considerations in any order. *See Pearson v. Callahan*, 555 U.S. 223 (2009).

Notably, qualified immunity is best addressed after determining whether a plaintiff has stated a constitutional claim upon which relief can be granted: "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). Therefore, because the Court recommends granting Defendants' Motion for Summary Judgment on the merits, the Court will not address Defendants' assertion of qualified immunity.

**D.     Conclusion**

For the above-stated reasons, the undersigned recommends granting Defendants' Motion to for Summary Judgment (docket no. 23). Additionally, Defendants' outstanding Motion (docket no. 30), and Plaintiff's outstanding Motions (docket nos. 28, 34, 35, and 38) should be denied as moot.

The Court should, therefore, dismiss this matter in its entirety.

**III.     Notice to Parties Regarding Objections**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: January 16, 2015            s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served up counsel of record and on Plaintiff Terrance Wayne on this date.

Dated:  January 16, 2015                      s/ Lisa C. Bartlett
                                                                Case Manager